## In re LEONARDI'S INTERNATIONAL, INC., Debtor.

### LEONARDI'S INTERNATIONAL, INC., Plaintiff,

v.

DICKERSON ENTERPRISES, INC., a Florida corporation, and Rachel E. Dickerson, Donald F. Dickerson, and J.T. Purdue, as Co–Trustees under Last Will and Testament of Donald W. Dickerson, dated August 16, 1968, Defendant.

Bankruptcy No. 90–22864–BKC–SMW. Adv. No. 90–0294–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Oct. 16, 1990.

Kenneth S. Rappaport, Boca Raton, Fla., for debtor.

Sheldon Slatkin, Coral Springs, Fla., for creditors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Chief Judge.

THIS CAUSE came before the court upon the complaint of Leonardi's International, Inc. (the "debtor") against Dickerson Enterprises, Inc., Rachel E. Dickerson, Donald F. Dickerson and J.T. Purdue as Co–Trustees, (the "creditors") for breach of contract and for rescission or reformation of a lease, and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

Jurisdiction is vested in this court pursuant to 28 U.S.C. § 157(a), (b) and § 1334. This is a core proceeding in which the court is authorized to hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b)(2)(I).

On April 26, 1983, the debtor and Dickerson Enterprises, Inc., entered into a lease agreement whereby the debtor became the lessee of one-half of the ground floor of a two story building located at 2681/2881 East Commercial Boulevard, Ft. Lauderdale, Florida. The lease provided for a monthly rental of $2,257.50 and provided that the debtor would have an option to lease the other half of the ground floor should that portion of the premises become available. On March 9, 1987, a Second Addendum To Lease was executed by the same parties for the rental of the entire ground floor of the building. The Second Addendum To Lease, combined with the original lease, provided for a monthly rental of approximately $4,300.00.

Thereafter, negotiations commenced between the debtor and the attorney for Dickerson Enterprises regarding the possible leasing of the entire second floor of the building to the debtor. This portion of the premises had remained unoccupied since

the departure of the previous tenant in June of 1983. The attorney for Dickerson Enterprises and the debtor both agreed that the second floor of the building was suitable for office space and could be strongly marketed for that use. In order to induce the debtor to enter into the new lease and take possession of the second floor of the premises, the attorney for the creditor arranged for Dickerson Enterprises to provide certain funds to the debtor for physical improvements to the second floor which would promote the marketing of the premises as office space.

Accordingly, on August 31, 1987, the debtor, Dickerson Enterprises, and the other creditors, who were joined for the purpose of including certain property for parking, executed a new lease whereby the debtor became the sole tenant of the entire building. The debtor obligated himself to make monthly rental payments of $9000.00 to the creditors. Additionally, the parties executed an Addendum to Lease wherein Dickerson Enterprises agreed to provide a loan to the debtor for a sum of money between $75,000.00 and $125,000.00 for improvements to the second floor of the building. Both the debtor and the attorney for Dickerson Enterprises agreed that this arrangement would benefit each of the parties in that the debtor now had the opportunity to sublease the premises as office space and the creditor now had the assurance that the second floor would no longer remain unoccupied.

Sometime thereafter, the debtor submitted preliminary architectural plans to the attorney for Dickerson Enterprises which evidenced the improvements envisioned by the debtor for the second floor of the premises. The debtor then requested a partial disbursement of the loan proceeds in order to pay for the architectural plans. Dickerson Enterprises refused to release the funds to the debtor contending that the payment of "soft costs", such as architectural fees, were not permitted to be made from the improvement fund provided by Dickerson Enterprises in the lease addendum. The debtor did not have the $12,000.00 necessary to pay the architect for the certified final plans. The architect hired by the debtor refused to release the certified plans until payment was made. In the time that followed, the debtor continued to be responsible for payment of the rent on the entire building. In November of 1989, the debtor could no longer meet the rental obligation due under the lease and ceased making payments to the creditors.

In count I of the adversary complaint, the debtor seeks damages for breach of contract based on the failure of Dickerson Enterprises to release the funds necessary to pay the architectural fees. In count II, the debtor seeks either reformation or rescission of the lease agreement. The debtor's complaint centers on the necessity of the Court receiving parol evidence in interpreting that portion of the lease addendum wherein Dickerson Enterprises agreed to provide the funds to the debtor. That part of the lease addendum provides, in its material portion, the following:

8. *IMPROVEMENTS TO PREMISES* ... F. (1) Lessor shall make available an amount of money which shall not be less than Seventy–five Thousand nor more than One Hundred Twenty–five Thousand ($125,000.00) Dollars for internal improvements on the second floor of the building, which include remodeling of offices, plumbing, air conditioning duct work, partitioning, carpeting and wall covering. The availability of these funds shall only be made upon Lessor's written consent to certified architectural plans for each phase of construction together with Lessor's written consent of contractors, materials and contracts of construction. Lessor shall have no less than seven (7) days written notice for approval requests. The $125,000.00 shall be disbursed solely for the benefit and use on the second floor and shall not be used for any first floor remodeling or exterior improvements. The funds shall be made available for payment directly upon requisition by the architects and general contractor and upon receipt of appropriate evidence that work has been performed and completed to the extent of the requisition requested. The architects

and general contractor shall provide appropriate partial releases at the time of the requisition for payment of the funds. The funds shall be payable to the general contractor and to all other parties deemed appropriate by attorney for the Lessor.

■ Florida courts have adhered to the latent ambiguity versus patent ambiguity distinction and ordinarily allow parol evidence where there is a latent ambiguity and reject it where there is a patent ambiguity. *Landis v. Mears,* 329 So.2d 323 (Fla. 2d DCA 1976). Extrinsic evidence is inadmissible if the ambiguity is patent, because such evidence would, in effect, allow the court to rewrite the contract for the parties by supplying information the parties themselves did not choose to include. *Hunt v. First National Bank,* 381 So.2d 1194 (Fla. 2d DCA 1980). The creditors allege that paragraph 8(F) of the lease addendum is clear on its face as to the non-inclusion of the payment of architectural fees out of the loan proceeds. The creditors point out that the first sentence of paragraph 8(F) states that the funds were to be made available for "internal improvements" to the second floor, meaning only actual physical improvements to the second floor. In the alternative, the creditors allege that if the Court should find paragraph 8(F) to be ambiguous, then the ambiguity is on the face of the document and should be deemed a patent ambiguity which would foreclose the admissibility of extrinsic evidence.

■ A latent ambiguity is said to exist where a contract fails to specify the rights or duties of the parties in certain situations and extrinsic evidence is necessary for interpretation or a choice between two possible meanings. *Bunnell Medical Clinic, P.A. v. Barrera,* 419 So.2d 681 (Fla. 5th DCA 1982). In such instance, this evidence is required because the instrument itself does not provide sufficient insight into the intent of the parties. *Crown Management Corp. v. Goodman,* 452 So.2d 49 (Fla. 2d DCA 1984). In this case, paragraph 8(F) of the lease addendum clearly indicates that the certified architectural plans were to be submitted to the creditor as a condition precedent to disbursement of the loan proceeds. However, paragraph 8(F) of the lease addendum also states that the funds shall be made available for payment directly upon requisition by the architects and general contractor. The language of paragraph 8(F) does not state that Dickerson Enterprises will not be responsible for architect fees or other so called "soft costs" associated with construction improvements. When read in its entirety, the lease addendum does not provide sufficient insight as to whether the parties intended that the payment of architectural plans would be covered under the loan proceeds.

Dickerson Enterprises attempts to support its position that payment of "soft costs" are not covered under the loan proceeds by referring to specific language in paragraph 8(F) which states that, "The funds shall be payable to the general contractor." However, this is not determinative since the sentence continues to read, "and to all other parties deemed appropriate by attorney for the Lessor." The debtor could have reasonably concluded that "all other parties deemed appropriate by the Lessor" would have included the architects.

■ It is fundamental that doubtful language in a contract should be interpreted most strongly against the party who selected that language. *Finberg v. Herald Fire Insurance Company,* 455 So.2d 462 (Fla. 3d DCA 1984). When construing a contract, a court should place itself as nearly as possible in the exact situation of the parties to the instrument when executed, so as to determine the intention of the parties, objects to be accomplished, obligations created, and should reach an interpretation consistent with reason, probability and practicality. *Bay Management, Inc. v. Beau Monde, Inc.,* 366 So.2d 788 (Fla. 2d DCA 1978).

The lease addendum was executed for the purpose of allowing the debtor to rent the second floor of the building and to make certain physical improvements thereon which would allow the debtor to sublease the second floor as office space.

Dickerson Enterprises would also benefit since the physical improvements to the second floor would increase the value of the property, and create an income stream from property which had been vacant since June of 1983. Since Dickerson Enterprises drafted the instrument and had the opportunity to specifically state in the lease addendum that certain "soft costs", including payment of architectural plans, would not be covered out of the loan proceeds, it would not be unreasonable for the debtor to assume that payment of the architectural plans, which were required to be submitted to the creditor, would be covered under the loan proceeds. Thus, this Court finds that Dickerson Enterprises breached the lease agreement in that a fair and equitable construction of paragraph 8(F) of the lease addendum would allow for the payment of architectural fees out of the loan proceeds.

■ However, the Court also finds that the debtor has failed to meet its burden of proof with respect to an award of damages by this Court based on the breach by Dickerson Enterprises. The debtor failed to introduce sufficient credible evidence, beyond the opinion testimony of the principle of the debtor, so as to indicate to this Court the actual loss sustained by the debtor as a result of the failure of Dickerson Enterprises to provide the funds required to pay the architectural fees. Because the testimony of the principle of the debtor, in and of itself, did not provide this Court with a quantifiable measure of the actual loss sustained by the debtor, the Court concludes that the debtor shall not recover damages from the creditors.

■ The debtor also argues that a breach of the lease addendum by the creditors gives rise to the remedies of rescission or reformation of the lease. The general rule is that cancellation or rescission will not be granted for breach of contract in the absence of fraud, mistake, undue influence, or some other independent ground for equitable interference. *Pinellas Central Bank & Trust Co. v. International Aerodyne, Inc.*, 233 So.2d 872 (Fla. 3d DCA 1970). "Fraud" includes the act of taking

unfair advantage of another to his injury which amounts to unconscionable overreaching. *Fishman v. Thompson*, 181 So.2d 604 (Fla. 3d DCA 1966). A court of equity will not hesitate to interfere where it is perfectly plain to the court that one party has overreached the other and has gained an unjust advantage which it would be inequitable to permit him to enforce. *Fishman*, 181 So.2d at 608.

The evidence supported findings that the conduct by the attorney for Dickerson Enterprises, in connection with the negotiations leading to the execution of the lease agreement for the second floor of the building, amounted to overreaching by which Dickerson Enterprises was able to gain an unfair advantage over the debtor. At the time of executing the lease agreement, the attorney for Dickerson Enterprises knew that the debtor was representing himself in the negotiations. Dickerson Enterprises, and its attorney, also had reason to know that the fees for the proposed architectural plans for the second floor improvements would be substantial. Despite this apparent knowledge, Dickerson Enterprises did not include precise language in the lease addendum to indicate that the loan proceeds were not to be used to pay for architectural fees.

Further, the attorney for Dickerson Enterprises appeared to be acting in the best interest of both the debtor and Dickerson Enterprises when negotiating the lease agreement. It was the attorney for Dickerson Enterprises who approached the debtor with the idea of leasing the second floor of the premises. Additionally, when the debtor disclosed that it did not have the funds available to make the necessary improvements to the second floor, the attorney stated that he might be able to arrange financing for the debtor through Dickerson Enterprises.

On these facts, the Court concludes that the debtor is entitled to a rescission and cancellation of the August 31, 1987 lease based on the overreaching by the attorney for Dickerson Enterprises. The debtor and creditors shall be returned to their original positions before the execution of the lease

and addendum, with the debtor being responsible only for the rental of the entire first floor of the building.

## FINAL JUDGMENT

In conformity with the Findings of Fact and Conclusions of Law of even date, it is hereby:

ORDERED AND ADJUDGED that, with respect to Count I for Breach of Contract, the debtor, Leonardi's International, Inc., shall not recover damages from the creditors, Dickerson Enterprises, Inc., Rachel E. Dickerson, Donald F. Dickerson, and J.T.

Purdue, as Co–Trustees. With respect to Count II for Rescission or Reformation, the Lease Agreement and Addendum, executed by and between the debtor and the creditors on August 31, 1987, is hereby rescinded.

DONE AND ORDERED.