833 So.2d 873 (2003)
CARTAN TOURS, INC., a Delaware corporation, Appellant,
v.
ESA SERVICES, INC., a Delaware corporation, Appellee.
No. 4D02-874.
District Court of Appeal of Florida, Fourth District.
January 2, 2003.
Kenneth B. Robinson and Noam J. Cohen of Rice, Pugatch, Robinson & Schiller, P.A., Miami, and Jesse H. Diner of Atkinson, Diner, Stone, Mankuta & Ploucha, P.A., Hollywood, for appellant.
Richard Lydecker and Peter Hoogerwoerd of Lydecker & Associates, P.A., Miami, for appellee.
*874 PER CURIAM.
Plaintiff Cartan Tours, Inc. ("Cartan") filed suit seeking declaratory judgment as to its rights and obligations under a contract with Defendant ESA Services, Inc. ("ESA"), and the return of its payments made under the agreement. ESA moved for judgment on the pleadings, and Cartan appeals the final judgment in favor of ESA. We reverse the trial court's order with instructions to reinstate Cartan's complaint.
Cartan set forth the following facts in its complaint. Cartan and ESA are both Delaware corporations, and ESA's principal place of business is in Fort Lauderdale, Florida. ESA manages and operates hotels and motels under the name of `Extended Stay America' Cartan managed corporate Olympic programs for the 2002 Salt Lake City Winter Olympic Games, and in that capacity entered into the Salt Lake City Olympic Games Hotel Agreement ("Hotel Agreement") with ESA. Under the Hotel Agreement, Cartan was to pay $2,452,800.00 in exchange for the license of 372 rooms at three sites in Salt Lake City during the Olympics. Cartan has paid the full $2,452,800.00 to ESA.
The Hotel Agreement contains a force majeure clause as follows:
In the event of material acts, including without limitation, civil disorder, strikes, government actions, terrorism, or other material acts beyond the reasonable control of either party to this Agreement, and affecting the ability of the Olympic Games to be held, the Hotel shall refund to Cartan all RLC payments made by Cartan pursuant hereto ....
(emphasis added).
The complaint goes on to describe the acts of terrorism that took place on September 11, 2001, the delivery of anthrax-contaminated letters in Florida, New York, and Washington D.C., the war against terrorism including hostilities in Afghanistan, and the public perception that the Olympics are a likely target of terrorists. These circumstances, Cartan alleged, "have drastically affected the ability of the Olympic Games to be held in a manner reasonably contemplated by the parties at the time they entered into the Hotel Agreement."
ESA filed a motion for judgment on the pleadings, arguing that the events described in the complaint did not affect "the ability of the Olympic Games to be held," and that "the complaint is hopelessly riddled with pure speculations concerning why Cartan feels the general public is not purchasing Cartan's tour packages to Salt Lake City ...." ESA argued that because the Olympics were going forward, as conceded in the complaint, the facts Cartan set forth were not sufficient to trigger the force majeure clause.
One of the points Cartan raises on appeal is that the phrase "affecting the ability of the Olympic Games to be held" is ambiguous, requiring the court to look to extrinsic materials to determine the intent of the parties. See Dinallo v. Gunster, Yoakley, Valdes-Fauli & Stewart, P.A., 768 So.2d 468, 471 (Fla. 4th DCA 2000) (in construing ambiguous contract term, ruling as to parties' intent will be sustained if supported by competent, substantial evidence); Elmore v. Enter. Developers, Inc., 418 So.2d 1078, 1080 (Fla. 4th DCA 1982) (court may look to extrinsic evidence to determine parties' intent in construing ambiguous terms of agreement). Because construction of the ambiguous language requires that the court look beyond the pleadings, and judgment on the pleadings is limited strictly to the pleadings, it was error for the trial court to grant ESA's motion. See Krieger v. Ocean Props., Ltd., 387 So.2d 1012, 1013 (Fla. 4th DCA 1980) *875 (citing McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976) (judgment on the pleadings is limited wholly to the pleadings)). We agree.
In considering a motion for judgment on the pleadings, courts must take the well-pleaded allegations of the party opposing the motion as true, and the allegations of the moving party that have been denied as false. Windle v. W.W. Windle Co., 731 So.2d 36, 37 (Fla. 4th DCA 1999); Gen. GMC Truck Sales and Serv. Inc. v. J.D. Simm, 430 So.2d 998, 999 (Fla. 4th DCA 1983). Motions for judgment on the pleadings must be decided wholly on the pleadings, without the aid of outside matters. Krieger, 387 So.2d at 1013.
Because the phrase "affecting the ability of the Olympic Games to be held" could reasonably mean preventing the games altogether as ESA contends, or simply affecting them as Cartan urges, it is ambiguous. Yardum v. Scalese, 799 So.2d 382, 383 (Fla. 4th DCA 2001) ("Where a written instrument lends itself to more than one reasonable interpretation, it is ambiguous and therefore summary judgment is improper for either party."). As such, relief on the pleadings was improper because the ambiguity requires the court to look beyond the pleadings to interpret the language of the contract. Krieger, 387 So.2d at 1013; Dinallo, 768 So.2d at 471.
Accordingly, we reverse the order granting ESA's motion for judgment on the pleadings, with instructions to reinstate Cartan's complaint.
REVERSED AND REMANDED.
POLEN, C.J., GUNTHER and HAZOURI, JJ., concur.